Good morning. Christian Morris on behalf of Lela McGee. I'd like to reserve five minutes for my rebuttal. We're here today because a verdict came in that was contrary to the clear weight of the evidence that was presented at trial. The issue is, is can a proven, kind of what was referred to ancillary issue, be dismissed because more significant issues, such as back pain and need for treatment there, were not proven? I understood the court below to be focusing on the fact that while there was discussion of both the shin injury and the back injuries and more serious injuries, there was no evidence to quantify what the shin injury would be in terms of value. Is that wrong? That is not wrong. It is a matter of did we parcel out, sure, this is what the shin injury is worth, this is what the back is worth. Generally, that is not done when you're talking about the damages. There's just simply one line on the verdict form for the amount of the medical expenses, one line. Well, sure, except for, that's true, there's going to be one line on the verdict form, but the evidence presented to the decision-maker here, the jury, would give them some basis to understand that if they're in a position where they, you know, if you have more than one injury, they accept that one injury is valid and recoverable but others aren't. They have a basis of evidence to quantify the thing that they're accepting and distinguish it from the things that they are not accepting. So here, looking at this record, I don't see what was presented by the plaintiffs at trial for the jury to understand the value of the shin injury. So the value of the shin injury was presented through evidence. First of all, it was a central part of the discussion of the case in my opening statement, talking about the fact that she had hit into this large end guard that was sharp. There was a gash. There was gushing blood not only on the top of this end guard but also around the end guard there was blood. The employees, her husband turned around, saw her, said that there was no doubt what had caused her fall. Employees came over, bandaged her up, cleaned the blood up. She made her statement. They wrote it down in an incident report. She left Target in a scooter. She went to the emergency room where she had treatment, where both our expert and the defendant's expert admit that at that point her main cause of her complaints was this pain to her lower extremity in which they took an X-ray and she got treatment for it. That was the evidence that was presented at trial. Okay. All of that evidence that you've just described, I give you, describes injury. Right. The fact that an injury occurred. Yes. What about that evidence tells the jury how much to award for that injury if they believe that Target is responsible for it? The jury is of the purview to award whatever amount that they believe to be fit for that injury, which is not zero, where the clear weight of the evidence is that she was injured. Then can I, reading between the lines of the answer that you just gave me, there is no evidence in front of the jury in terms of a dollar amount. For example, a hospital bill where they can see a line item of treatment for the shin, it costs $150. There's nothing like that for the jury. The treatment for going to the hospital was obviously confirmed by the doctors who testified that she did go to the emergency room. She went to Mountain View. The amount of the medical bills, I believe, were like $5,000. But you're right in saying this. In closing argument, was it said, this is what you need to award for her leg. This is what you need to award for her back. It was not parceled out like that. There's no requirement, however, that it be parceled out like that. It is to say this is the value of the case. The issue in what happened here in this verdict is that there was clear evidence that she was objectively injured. There was no argument that something else objectively injured her. And the good case that kind of addresses that is the Gutierrez case where a vending machine fell on the boy, and he had obvious injuries. There was an allegation that there was brain injury, and in that case it wasn't parceled out either. This is what it should have been for simply the objective. The jury came to a decision that they found only that to be related. But in that case, you have to look at what the jury was presented. For them to come to a zero verdict, they would have to have evidence that she wasn't hurt, which was not provided by the defense. There wasn't a dispute that she was injured. There wasn't a dispute to say that this end cap didn't cause the injury. Well, hold on. On that point, it seems like the verdict form says there was negligence but not causation. So does that finding not extend to the shin also? And that's the issue with it, because the clear weight of the evidence provided by both sides is that, sure, she hurt her shin. Sure, she got bandaged. Sure, she went to the ER. That was what was presented. So for the jury to come back and say there was no damages is where the verdict is opposite from the clear weight of the evidence that was presented to them. The Cox case is a case that I'm confident the defense will rely on heavily. In that case, they found that the MGM and Copperfield were negligent because there was a code violation with the ramp. But in that case, it wasn't that, well, the code violation and the ramp didn't cause it. They argued that, in fact, at a separate location, not on the ramp, 15 feet away, that's where the plaintiff fell. So the ramp had nothing to do with it, which is opposite from the evidence here in this case where even the judge admitted, yeah, that's probably what caused her fall. But there's no evidence to say that it wasn't because even the store clerks, when they came over, saw the blood. Both of them put their foot into the end cap area. So what happens is Target changes out their end cap displays, and Lila was shopping those displays. But they failed to move the end cap guard that protects the display to be flush with it. And so they even measured it with their foot to say, oh, yeah, that's what happened. There was no dispute that she fell, that there was blood on the end cap guard, that there was blood around it, that she needed to be bandaged, and she had that injury. But, I mean, I guess we're reviewing a jury verdict, so some deference is owed to the jurors.  And they have a verdict form that checks yes on negligence and no on causation, so we're left with that. I mean, a question here is whether they, you know, obviously your client was injured in the store. There's no dispute about that. But the video doesn't really show what happened, and nobody seems to have seen it happen. And so we have her testimony about what she says happened. But they may have not believed your client's, you know, account of it and concluded that she fell on her own or through some preexisting condition or otherwise that was not necessarily caused by the poorly placed end cap. And so given all that, what basis do we have to kind of second guess that? Absolutely. So in this case, the angle of the video does not show the actual fall because it's kind of angled down so you can't see the floor. That would be direct evidence. But direct evidence holds the same weight as circumstantial evidence. And in this case, Leila actually testified, I didn't know what I fell on until I looked up and saw the end guard and all of the blood. It wasn't her only that said this is what caused my fall. It was her husband turning around, seeing the blood on the end cap. But he didn't see her actually fall, right? He did not. But again, we have to go back to circumstantial evidence. And this is in many cases we have to rely on circumstantial evidence. Even though we have a video here that doesn't show the actual fall, you have documentation from the store workers who came over, who not only saw the blood on the end cap, saw the blood around it, measured it to be like, oh, yeah, that's what happened. I mean, that is the testimony that they provided on the stand to the jury. Right. So, I mean, the argument you're making sounds like one that could have been credited, right? But it also, the question then is, is it one that the jury had to credit? Well, that's where it's the greater weight. Because other than that, what your speculations are is was it a preexisting that caused her to fall? Was it something else? If there was any evidence presented to the jury of that, then we could be talking about it. But there was no evidence. And so that's where you have to look at where the greater weight of the evidence was, that she was injured as a result. Of course, not to the extent of the other claimed injuries. But there's nothing in Nevada law that says a lesser injury cannot be considered simply because the greater injuries were not proven to get the biggest verdict. And so that's where we sit in this case. Because, yes, it wasn't seen, but every single piece of circumstantial evidence, why would her blood be on the end cap? Why would it be surrounding the end cap? Why would the employees come there seeing her laying around, measuring it with their foot, if that wasn't what the circumstantial evidence proved? If there were blood in another area, if they had alleged she had some sort of episode of syncope and she had passed out, none of that occurred. And so to say, well, this is the only person who said it happened this way, is not true. In fact, all of the evidence surrounding it, not only the actual evidence of the blood, but the employees who came over who obviously don't have any kind of weight to say, oh, yeah, well, we had no reason to believe it. They wrote it down in the incident report that the cause, what was the cause of it? They wrote the end cap guard was too far from the display case. I mean, they wrote it down in their incident report. And so there wasn't any other reason for the jury to speculate. If they had wanted to prove it like in the Cox case, they would have alleged a separate location. They would have said that there was something else that caused it. And so for them to say, well, it wasn't caught on video, so that's not going to prove the case, is not how Nevada law works. Circumstantial evidence is significant evidence. It holds the same weight as direct, which is why this verdict should be reversed and allowed to look at the evidence and the witnesses that talked about what her actual injury was. Okay. Do you want to save the rest of your time for rebuttal? I would like to. Thank you. Thank you. I appreciate it. Good morning. Morning. Good morning, Judge. Lauren Young for Target Corporation. I'd like to start off with indicating why, what was this case about? This case was alleged at the beginning of trial that it was a trip and fall, and this alleged trip and fall caused injuries. That's what this case was all about when it began. Through trial, that changed. And I'll discuss that here in a second. But I wanted to clarify because in the briefs, it's not clear what standard they're alleging in their brief. And it's clear from the Landis case, from the Cody case, that the plaintiff must show that the verdict was against a clear way of the evidence. And they, in the Ninth Circuit, will review that order from the district court for a clear abuse of discretion. Can I just focus you in on a second to follow up on something your friend was arguing at the end? What would you point to in the record that establishes that the scratch on the shin wasn't related to the end cap? Well, first, the plaintiff's testimony. The plaintiff testified that she did not know how she cut her shin. Second, there was no specific medical evidence for a cut on the shin. The plaintiff did not go to the hospital or seek treatment the day of the incident. She was given some paper towels to wipe it up, given a Band-Aid, and then she left the store. In addition, everyone speculated as to what potentially caused this incident. Mr. Grant is plaintiff's husband. He said that he didn't see it, turned around and saw plaintiff, and didn't know what happened. Plaintiff testified she fell and hit her head and her back, fell backwards. And she did not know how she cut her shin. The target employees responded and wrote a report. The report was based upon what plaintiff told them, not what they saw because they did not see the fall as it happened. And what plaintiff also testified to was that she caught her left foot. I don't know if I can describe this in words, but she caught her left foot between the guard and the end cap. So there was like, I'm trying to demonstrate a corner. So it was in between the display and a guard. That's what she testified to, that it was caught, but she never felt it. Her shoes did not have any scratches on it. And she testified that she fell backwards. I'm going to interrupt you for just one second. It seems to me that at trial, this case was all about the back injuries. That was where the money was, right? The significant injuries and not so much the shin. Did you make an argument or did you spend time with any of the witnesses in terms of pointing out that the shin injury hadn't been demonstrated to be connected to the end cap? Not until closing, I think, because like I said, from the beginning of this case, it started off as a trip and fall. And then when plaintiff testified at trial that the part of the video where her head disappears as she's walking in the area where this end cap guard was, everyone thought that was the fall. She testified that was not her falling. So that was the only potential area where anybody could have thought that the fall occurred. Because at that exact same moment when her head disappears, you'll see her husband turn around and go back towards the plaintiff. And that's what he testified to. He turned around because he heard her fall. So there's a complete lack of linking of that incident. So I didn't specifically talk to anyone about what caused the shin cut because nobody knew. Plaintiff I did ask, and she said she didn't know. And I asked her husband, and he didn't see it. So there's no specific evidence other than what my colleague has said about there being blood in the area. Now, I don't recall any evidence that there was blood on the guard. I believe there was evidence of blood around on the floor. But plaintiff did not claim in this case that she was simply walking by this area and scratched her shin on the guard. That's not what was asserted in this case. It was asserted that she got her foot stuck and then fell and injured her back. The cut, I agree with the district court, was an ancillary issue and never focused on. Interestingly enough, through the briefs of this appeal, plaintiff argues several times that it is an undisputed fact that this cut was created by the negligence of target. Yet that's not true. It was maybe undisputed, as judges, you said earlier, that it was undisputed that they saw a cut. There was a cut on the shin, but no one linked it. Nobody satisfied that causal link. That's exactly what I'm trying to think through, right? Like, put yourself in the shoes of the jury, and we have, you know, it's undisputed that there was this cut on the leg. Like, why? How did that happen, right? The jury is going to be thinking about that. And what were the options presented to the jury in terms of sorting that out? There were no options, and that's what Judge Dawson also found, is that he kind of speculated in his order a little bit, but he found that the credibility of the plaintiff was so bad that the jury disregarded her entire testimony. They did not find her to be credible at all. Right, I understand that, but it's interesting to think about that issue because we have this undisputed injury, right? So if they discredit her, then they can discredit the back injury as not even an injury, like it didn't happen or it didn't happen at this time or whatever. But we can't do that with the shin injury because it's undisputed that she had a cut, there was some blood there, she had a Band-Aid or whatever the store did before she left the store. So then the jury is left with, if that's on the table, if the shin injury is on the table at all as part of this case, what was the jury in terms of evidence given to figure out if it's related to target or if it's not related to target? It was solely based upon the circumstantial evidence of the photo that showed some blood in the area of the end cap guard. Other than that, there was no direct evidence of anything indicating that. Unfortunately, the video was not able to capture that area. As Judge Dawson found, he believes that when she bent down in that area, she may have cut her shin on the guard. But that's not a trip and fall. That's not related to a trip and fall. And I think that's the distinction, is that this case was presented that the plaintiff tripped and fell and then caused these injuries, whether it be the shin injury or the back injury. And I think the jury listened to her testimony being contradicted and impeached over and over again and simply did not believe any of her story and disregarded even the shin cut because she couldn't prove that it was from the guard itself. It could have been from the display or it could have been when she was sitting down on the bench or something. We don't know. And she couldn't even tell us. She just simply couldn't tell us. And in addition, to answer your question from before, in the record, I believe it's part of the appendix, it's page number, I wrote down ER561. That's Plaintiff's Trial Exhibit 16. That was a matrix of the medical damages that they presented to the jury that was allegedly occurred by this incident. And what happened was is they never submitted the bills supporting that chart to the jury. So to answer your question, Judge, the jury did not have any specific evidence, not even a bill, that they could go down and say, ah, $150 for a cut on the shin. They didn't have that evidence at all. So they didn't have the ability because not only was there no causational link to the actual incap guard, but then second off, they were not able to present evidence for only the cut. And I also submit that the cut did not lead to medical damages at the hospital because that visit was the next day and they called it a leg injury. But they did an x-ray for the left, I think it was the ankle or the left hip. It wasn't for the cut on the shin. So with all that, I believe that there was a complete absence of evidence to support this claim that's now been pivoted from the back injury to now the left shin. Is this case otherwise wrapped up in the district court or is there anything else like attorney's fees or otherwise that's happening below? The only thing that's pending is the court did make a ruling on a memorandum of costs, but deferred on ruling on the motion for attorney's fees. So you're seeking fees? Correct. Through an offer of judgment or some other? Correct. It was through an offer of judgment. Okay. Yes. So my colleague mentions the Cox case. And what's interesting is that if you look at the cases we cited, Zhang and the Cox case and the Cody case, those three cases talk about how it can be, there can be a zero verdict, even if you find negligence. The Cox case was interesting because there was a dispute as to how and where the injury occurred. In the Cody case, it says, actually, in the Cody case, the court reversed that ruling because the party stipulated to some negligence and some physical injury. Here, there was no stipulation as to that. That was about causation. There was only an acknowledgment that they found a cut on the shin. And then, in addition, the plaintiff, in the appellant's reply brief on page 8, they have a section there that says, there is no dispute McGee was injured due to the placement of the end cap. The only dispute is if she fell in the manner as she alleged. That's partly true. However, they go on and they state in that second full paragraph, the district court's findings, target's arguments, and the evidence all show that McGee injured her leg due to the negligent placement of the cap. That's not true. The only thing that it was acknowledged is that they found a cut on the left shin. Nobody agreed or proved that it was actually related to the placement of the end cap. And then they continue and they say the only dispute is how much or how such injuries occurred, not if they occurred. That part, I do agree. They never proved how that left shin occurred, other than presenting circumstantial evidence that the jury just did not believe and did not buy. So, judges, I would I would I'd like to just say, quote, one thing from the from the Cody versus Carlson case. It states in many but not all cases where we have reviewed a denial of Rule 59 motion for a new trial based on the clear weight of the evidence. We have reviewed we have reviewed for a clear abuse of discretion, a wording that emphasizes our deference to the jury's findings and our obligation to decide matters of law, not of fact. The addition of the word clear does not change the core review for an abuse of discretion, but rather emphasizes the limited nature of our appellate function, specifically where the basis of a Rule 59 ruling is that the verdict is not against the weight of the evidence. The district court's denial of a rule of a Rule 59 motion is virtually unassailable in those. In such cases, we reverse for clear abuse of discretion only where there is an absolute evidence, absolute absence of evidence to support the jury's verdict. Judge Dawson did an order and he actually set forth applicable standard of care, whether the jury verdict is against the clear weight of the evidence. He then assessed the credibility of the witnesses. He weighed the evidence that was submitted and made a ruling that not only was the verdict not against the weight of the evidence, but he also found that the verdict was supported by substantial evidence. And then in the DSPT case, it specifically states a jury's verdict must be upheld, must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. And that's what we have here. We have substantial evidence that supported this jury's verdict that they simply did not find plaintiff credible and disregarded her testimony. In addition, Dr. Garber, the expert for the appellant, he never testified specifically about a cut on the shin. He just generically said that he reviewed records and found them all to be reasonable and related. Yet, absent from the opening and the closing statement from the counsel for Ms. McGee, did not specifically even mention the cut to the left shin, let alone any particular damages or treatment provided specifically to the cut of the left shin. Thus, I would say, I would submit that the district court's order complies with the standards for denying the motion for a new trial. I would submit that. Thank you. Thank you, Mr. Young. Ms. Morris. Thank you, Your Honor. There was significant evidence as to what caused it, despite what my colleague has stated. Her husband testified on the stand that he heard her yell, that he looked back and saw Lila on the ground and the blood on the end cap and the cap guard. And there was no mystery as to what had caused it. Lila testified she did not originally know what caused her to fall. But when she and the managers were over there, looked and saw the end guard, and that the manager put his foot in the end guard, there was blood on the end guard and blood on the floor. The manager testified that he did come over and there was blood on the end cap and blood on the floor, and he put his foot in there. In the incident report, it states what caused this. And I read it to him that the end cap guard was too far away from the end cap. And he agreed yes with that statement, that he put his foot in there and it was too far away. The argument from the defense is that there's this vacuum where she just magically falls. Caused by what? And the blood, we should just disregard it. And the cut on the leg. Pain and suffering is a damage. She walked in there and left in a scooter, bandaged. She went and got a tetanus shot because the end cap guard was rusty. Then she went and we talked about this. He's acting as if the leg was not involved. It was clearly laid out in opening. Both experts testified about it. Their expert confirmed that, yes, she went and had pain complaints, but it was only to her leg. Her calf and her thigh, and they took an x-ray of it. At no point did they ever dispute that the end cap guard had caused the fall. At no point did they ever dispute that she had fallen. That is substantial evidence as to what caused her fall. And so the commentary by the judge. Obviously, he had issues with Lila's credibility. But even he begrudgingly admitted she fell. And so that is where it has to be focused on. Is to say, do we then just dismiss all of the evidence because of the fact that there were issues on credibility on the remainder of her damages? Now, why was there a heavy focus on her back? Because that was the dispute in the case. The leg was not the dispute. They did not claim it didn't happen. They didn't offer an alternative theory, which is essential for their argument if they are to rely on Cox. Because there was no blood in any other area. There was no other sharp object that would have caused it. They didn't have any evidence that it was from something else. And so that is why this is ripe for the reversal on this issue of the leg. Because despite what was represented at trial, there was no argument, not even from their own expert, that, yeah, she had the damage to her leg. She went and got treatment for it. The matrix that he referenced was related to her back. Why? Because that's what we were heavily discussing. Because that's where the dispute lay. It did not lie with the leg. I don't hear other questions from our panel, so I want to thank you very much for your presentation this morning. I want to thank both counsel for the well-argued appeal. I want to thank both counsel in the prior case. I see you're still here as well for the well-argued appeal. And it's great to have so many members of the Las Vegas Bar here with us in San Francisco. We all know each other. I assumed you did. You can all fly back together. This case is submitted. We'll turn to our last case.
judges: BRESS, FORREST, Ohta